ANDERSON FOWLER AND OTHERS, PLAINTIFFS, *v.* THE LIVERPOOL & GREAT WESTERN STEAM COMPANY, DEFENDANT.

*Contract by common carrier to receive and transport goods—what an excuse for not forwarding them by the first conveyance.*

October 14, 1869, the defendant engaged to transport for account of the plaintiffs on board its steamship *Minnesota* or *Nevada*, for Liverpool, three hundred bales of cotton at ½d. per pound; at that time the cotton was on its way from Mobile, the date of its arrival being uncertain. The *Minnesota* was to sail on October 27, and the *Nevada* on November 3. The cotton arrived on October 23; and was all delivered at the defendant's pier by the 26th. When it arrived there was sufficient cotton loaded, and on the pier, which had been specially engaged for the *Minnesota*, to fill that vessel. For that reason the plaintiffs' cotton was not taken by that ship, but was taken by the *Nevada*, and arrived in Liverpool seven days after that taken by the *Minnesota*.

In an action brought by the plaintiffs to recover damages, occasioned by a fall in the price of cotton, between the times of the arrival of the two ships, *Held*, that they were not entitled to recover.

MOTION for a new trial on exceptions ordered to be heard in the first instance at the General Term, after a verdict in favor of the plaintiffs directed at the Circuit.

*C. Van Santvoord*, for the plaintiffs.

*S. P. Nash*, for the defendant.

DYKMAN, J. :

The broker's memorandum of the contract between these parties is as follows :

"NEW YORK, October 14, 1869.

"Engaged for account of Fowler Brothers, on board steamship *Minnesota* or *Nevada*, for Liverpool, three hundred bales of cotton, at ½d. per lb.   Pier 46 North river.

"CAREY & YALE, *Agents.*

"WILLIAMS & GUION, 71 Wall street."

At this time the *Minnesota* was advertised to sail for Liverpool from New York, on October 27, 1869, and the *Nevada* was advertised to sail from the same for the same port, on November 3, 1869, and the cotton was on its way from Mobile, with the day of its arrival uncertain. It did reach New York on October 23, and sixty-two bales of it were sent to Pier 46 North river, on October 25, and the remaining two hundred and thirty-eight bales were sent to the pier on October 26, and by mistake receipts were given for the cotton by the receiving clerk, for the steamer *Minnesota*. The clerk had no authority to exercise any option under the contract. When this cotton reached the pier the defendant had cotton there more than sufficient to fill the *Minnesota*, engaged specially for that vessel, and she sailed with a full cargo without the cotton of the plaintiff. The only reason for not taking this cotton on the *Minnesota*, was that she was already full with cotton received before it. She arrived out on November 7. The cotton of the plaintiff went on the *Nevada* on November 3, and she reached Liverpool on the 14th. Between the 7th and the 14th there was a fall in the market value of cotton, and this action is brought for the recovery of the difference as the plaintiffs' damages. At the

Circuit a verdict was directed for the plaintiffs, and the exceptions were directed to be heard first at the General Term.

The defendant is a common carrier, and without the contract would have been under legal obligation to receive and carry the plaintiff's goods when offered for transportation, provided its vessel was not then full, and the goods were brought in a reasonable time. (Angell on Carriers, § 125.)

If, however, the goods were offered when the vessel was full, or when they could not be loaded before the arrival of the time to sail, then the defendant might send them on by the next vessel.

The contract substituted no different engagement. The plaintiff secured by it the right to transportation by the *Minnesota*, if the property arrived in a reasonable time for that vessel. That right was secured to them by the law, but the defendant was under no obligation to refuse other freight, or reserve space for this cotton when it was uncertain whether it would reach New York before the sailing time of the vessel. The agreement must be construed as an undertaking to carry by the *Minnesota*, if received in time for that vessel; if not, then by the *Nevada*.

The uncontradicted testimony is that, at the time this cotton came, the cargo of the *Minnesota* was complete; that there were goods sufficient for her lading then on board, or on the pier, in advance of this cotton, specially engaged for that vessel. That was a sufficient excuse for refusing to take the goods by that vessel, both under the law and under the contract.

Neither were the primary receipts of the receiving clerk an election to transport by the *Minnesota*; they were given by mistake and were not intended for such purpose by either party. They were intended only as memorandums, from which the bill of lading was subsequently to be made. They were in no sense contracts, and the clerk had no authority to make contracts for the defendant.

The result of this examination is that, by the refusal to transport the cotton by the *Minnesota*, the defendant violated neither his contract nor the law, and the plaintiff can have no recovery in this action.

Judgment reversed, and new trial granted, costs to abide the event.

Barnard, P. J., concurred.

Present—Barnard, P. J., Gilbert and Dykman, JJ.

Exceptions sustained, and judgment reversed, and new trial granted, costs to abide event.